UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ISHWAR KRUPA, LLC<br><br>v.<br><br>INDEPENDENT SPECIALTY INSURANCE COMPANY and CERTAIN UNDERWRITERS AT LLOYDS AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B604510568622021 | Case No. 2:22-cv-03240<br><br>Judge Eldon E. Fallon<br><br>Magistrate Judge Dana M. Douglas |

## ORDER AND REASONS

The Court has before it Defendants' Motion to Compel Arbitration in this matter. R. Doc. 13. Plaintiff has responded in opposition. R. Doc. 21. Having considered the briefing and the applicable law, the Court rules as follows.

### I.   BACKGROUND

This case arises out of alleged damage to property owned by Plaintiff Ishwar Krupa, LLC, which had a insurance policy ("the Policy") with Defendant Independent Specialty Insurance Company ("Independent"). R. Doc. 1-2 at 1-2. Plaintiff alleges that, on August 29, 2021, Hurricane Ida caused significant damage to its property. *Id.* Plaintiff alleges that Independent conducted an inspection which constituted "satisfactory proof of loss," but that Independent failed to adjust the claim or provide compensation to Plaintiff following the inspection. *Id.*

Plaintiff brought suit against Defendant, asserting: (1) breach of insurance contract; (2) violation of La. R.S. § 22:1892 for failing to meet statutory payment deadlines; (3) violation of

La. R.S. § 22:1973 for, *inter alia*, breach of a duty of good faith and fair dealing; (4) negligence. *Id*. at 3-5.

Plaintiff seeks damages including, but not limited to: (1) repair and remediation expenses; (2) structural damages; (3) inability to make appropriate repairs due to inadequate insurance payments; (4) any and all other applicable damages arising under any of the policy's sub-coverage limits, including but not limited to debris removal and increased cost of construction; (5) diminution in value of property; (6) loss of business income; (7) actual damages related to the increased cost of repairs; (8) attorney's fees and penalties; and (9) costs of this litigation and any pre-litigation costs related to the insurer's failure to make adequate insurance payments. *Id*. at 6.

Defendants generally deny Plaintiff's allegations and assert a number of affirmative defenses, including: (1) Defendants are entitled to a set off in an amount equal to any and all payments or benefits that Plaintiff received or is entitled to receive from any collateral sources; (2) damages limited by the Policy; (3) Defendants did not act in bad faith; (4) Defendants are not in violation of La. R. S. §§ 22:1893; 1973; (5) Defendants have satisfied their obligations under the Policy by investigating and adjusting Plaintiff's claims in accordance with the applicable statutes, rules, and regulations, and in accordance with the prevailing standards for the industry. R. Doc. 7 at 7-16.

This case was originally filed in Civil District Court for the Parish of St. Charles, State of Louisiana. Independent removed it to Federal Court citing a binding arbitration agreement falling under the New York Convention. R. Doc. 1 at 6.

## II.   DISCUSSION

Independent now moves this Court to compel Plaintiff to arbitrate its claims. Independent asserts that a binding arbitration agreement exists in its contract with Plaintiff, which makes it clear that "all matters in difference" must be resolved through arbitration. R. Doc. 13-1 at 4. Plaintiff does not contest that the insurance policy contains an arbitral clause, but claims that it is not binding.

There is a strong presumption in favor of enforcing arbitration provisions. Congress codified this presumption in the Federal Arbitration Act, mandating that arbitration provisions "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This establishes "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) (quoting *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The Fifth Circuit has identified two considerations when determining whether the parties have agreed to arbitrate a dispute: "(1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute falls within the scope of that arbitrations agreement." *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Here, Plaintiff points to Article II of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards to argue that the arbitration clause in question is not binding. Article II provides, in relevant part, that:

> 1. Each Contracting State shall recognize ***an agreement in writin**g* under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, ***signed by the parties*** or contained in an exchange of letters or telegrams.

Article II (New York, 1958) (emphasis added).

Here, the 'agreement in writing' consists of an arbitral clause contained in Independent's insurance policies. Plaintiff argues that it has not signed the arbitral clause, and that accordingly the arbitral clause does not constitute an agreement in writing under the meaning of Article II.

However, Plaintiff's argument is foreclosed by current Fifth Circuit precedent. In *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666 (5th Cir. 1994), the Fifth Circuit construed Article II of the Convention to require either (1) an arbitral clause in a contract or (2) an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams. *Id.* at 669. That court held that "[b]ecause what is at issue here is an arbitral clause in a contract, the qualifications applicable to arbitration agreements [i.e., the requirement that the agreement be signed] do not apply." *Id.* Put another way, the court held that the phrase "signed by the parties," modified only "an arbitration agreement" and not "an arbitral clause in a contract[;]" therefore, that "an arbitral clause in a contract" need *not* be signed by the parties.

The Court acknowledges that the Fifth Circuit's holding in this regard is in the minority view among circuits, and that the Fifth Circuit itself has suggested it may reconsider the ruling at some point. *See Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 223 (5th Cir. 2007); *Neptune Shipmanagement Services PTE, Limited v. Dahiya*, 15 F.4th 630 (5th Cir. 2021). But unless and until the Fifth Circuit does reconsider it, *Sphere Drake* remains the law of this circuit and binding on this Court. Therefore, the arbitral clause in the contract between Plaintiff and Independent is not rendered nonbinding by the fact that that it was not signed by Plaintiff.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is hereby **GRANTED**. This matter is thus **STAYED**. Defendant's Motions to Continue Submission of the Motion to Compel Arbitration, R. Doc. 22, and Motion for Leave to File a Reply Memorandum, R. Doc. 23, are hereby **DENIED AS MOOT.**

New Orleans, Louisiana, this 12th day of April, 2023.

_____
United States District Judge